**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RICHARD J. VERDUCCI, DANA M. VERDUCCI,

Plaintiffs,

vs.

EDWARD CODA; HAWAII FINANCIAL SPECIALISTS, INC.; et al.

Defendants.

CASE NO. 10-CV-782 JLS (NLS)

**ORDER: DENYING MOTION TO COMPEL ARBITRATION**

(Doc. No. 8)

Presently before the Court is Defendants' motion to compel arbitration. (Doc. No. 8.) Also before the Court are the parties' opposition and reply briefs. (Doc. Nos. 10 & 11.) For the following reasons, the motion to compel arbitration is **DENIED**.

**BACKGROUND**

This case involves tax and estate planning advice given by Defendant Edward Coda to Mr. John R. Verducci. Plaintiffs Richard Verducci and Dana Verducci proceed here as John Verducci's successors-in-interest, heirs, and beneficiaries.

Plaintiffs allege that Defendant Coda had a relatively longstanding relationship with John Verducci. (Compl. ¶ 11.) They assert that Defendant Coda encouraged John Verducci to create a "Private Family Foundation" as a way to minimize assets, provide money for his children, and donate to charity. (*Id.* ¶¶ 13–15.) This was allegedly done through the "National Heritage Foundation," which is "a large, controversial Virginia-based charity that has long battled federal tax officials

regarding the tax benefits it purportedly provided to its donors." (*Id.* ¶ 17.)

In 2006, Plaintiffs claim that President Bush signed legislation "which made a number of significant changes to the regulatory framework" for this sort of investment. (*Id.* ¶ 20.) However, Defendant Coda did not inform John Verducci of these changes and their effect on his estate plan. (*Id.* ¶ 22.)

Further, according to Plaintiffs, "Defendant Coda has a history of giving incompetent and even fraudulent tax advice." (*Id.* ¶ 24.) Allegedly, a United States District Court for the District of Hawaii entered a judgment against the Defendants enjoining a tax-fraud scheme which involved creating false deductions and causing the under reporting of income on tax returns. (*Id.*) "The Disciplinary and Ethics Commission of the Certified Financial Planner Board of Standards [also] found that . . . [this conduct] violated Rule 102, 201 and 607 of the Board's Code of Ethics and Professional Responsibility." (*Id.* ¶ 26.) Again, "Defendant Coda never told Plaintiffs or . . John R. Verducci of the complaint filed by the U.S. Department of Justice, the Stipulated Final Judgment of Permanent Injunction to which he agreed as a result, or the disciplinary action taken by the Board of Standards." (*Id.* ¶ 27.)

Plaintiffs claim that if they had known any of these details allegedly not disclosed, they would not have acted in the way advised by Defendant Coda. (*Id.* ¶ 29.) Moreover, Plaintiffs allege that they would have retained another tax adviser. (*Id.*) Eventually, because of a judgment against the National Heritage Foundation, "$115,899.00 of John R. Verducci's life savings went to the bankruptcy estate of the National Heritage Foundation, without any benefit at all to Plaintiffs or the estate of the late John R. Verducci." (*Id.* ¶ 33.)

Plaintiffs' complaint alleges three causes of action: (1) breach of fiduciary duty, (2) professional negligence, and (3) financial elder abuse. They seek compensatory damages of $115,899.00, general damages, punitive damages, and attorneys' fees.

//

//

//

//

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act's provisions reflect a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This "national policy" is enforceable in both state and federal courts and preempts any state laws or policies to the contrary. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

A court interpreting an arbitration agreement must resolve ambiguities as to the scope of the arbitration clause in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *AT&T Techs. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) ("[I]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."). The FAA requires courts to "rigorously enforce agreements to arbitrate" even when such agreements implicate claims arising under federal statutes. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Additionally, it "requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986). The overall mandate for arbitration is defeated only where circumstances demonstrate "a contrary congressional command," with the burden on the party opposing arbitration "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.*

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, a district court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel, Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quotation and citation omitted). In construing the terms of an agreement, the Court "appl[ies] general state-law

principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Therefore, a district court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 582–83 (1960).

## ANALYSIS

### I. Existence of an Arbitration Provision

For the Court to be able to order the parties here to arbitration, those parties must have contractually agreed to settle disputes through arbitration. 9 U.S.C. § 2. Defendants point to two contracts signed by John Verducci which contain arbitration agreements. (Doc. No. 8-4, Ex. 1 (Dec. 1999 Customer Account Form); Doc. No. 804, Ex. 2 (Mar. 2001 Account Application).) These contracts are between Mr. Verducci and SunAmerica Securities, Inc (herinafter "SagePoint"[1]) and pertain to investment purchases housed with SagePoint. (*See* Memo. ISO Motion at 2–3.)

Neither party disputes that John Verducci, and therefore Plaintiffs, are bound by these agreements. (*See* Memo. ISO Motion at 7; Opp. at 4–7.) There also appears to be no question that Defendant Hawaii Financial Specialists may not invoke this agreement. Hawaii Financial Specialists was neither a party to the agreement nor even tangentially connected thereto. As such, it has no standing under the agreement to compel arbitration of Plaintiffs' claims. As to Defendant Coda, the Court will assume, without deciding, that he has the right to invoke the provisions.

### II. Scope of the Arbitration Provision

Next the Court looks to determine "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). In doing so, the Court must keep in mind that the FAA requires it to "rigorously enforce

---

[1] SagePoint is the successor in interest of SunAmerica Securities.

agreements to arbitrate" and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Moses H. Cone*, 460 U.S. at 24–25.

The arbitration provisions signed by John Verducci read:

> It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted before the Pacific Stock Exchange, Inc. or any other National Securities Exchange on which a transaction giving rise to the claim took place (and only before such exchange) or the National Association of Securities Dealers, Inc. as the undersigned may elect. Arbitration must be commenced by service upon the other party of a written demand of arbitration tribunal. In the event the undersigned does not make such election within five (5) days of such demand or notice, then the undersigned authorizes you to do so on behalf of the undersigned.

(Dec. 1999 Customer Account Form at 5[2]; Mar. 2001 Account Application at 4.)

As stated above, Plaintiffs argue that Defendant Coda gave their father bad investment and estate planning advice which ultimately resulted in more than $100,000.00 being transferred to the bankruptcy estate of the National Heritage Foundation. (*See* Compl. ¶¶ 13–15, 17, 22, 24 & 33.) These funds were contained in Individual Retirement Accounts (IRAs) which designated the National Heritage Foundation as their beneficiary. (*Id.* ¶ 1.) And although it is not stated in the complaint, the relevant IRAs were in accounts that John Verducci opened with SagePoint. (*See* Memo. ISO Motion at 3; Opp. at 3.)

Although Defendants describe this provision as "very broad," the Court disagrees. (*See* Memo. ISO Motion at 8.) Where arbitration clauses are limited to disputes "arising under" an agreement, courts have described them as "'relatively narrow as arbitration clauses go.'" *Mediterranean Enters., Inc. v. Ssanyong Corp.*, 708 F.2d 1458, 1464 (1983) (citation omitted). This is in contrast to the case cited by Defendants in support of their position, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999). (Memo. ISO Motion at 8.) In *Simula*, the arbitration agreement covered "[a]ll disputes arising in connection with this agreement." *Simula*, 175 F.3d at 720. However, that decision also stated that an agreement providing for arbitration of disputes "arising hereunder" or "arising out of" the agreement is "considerably more narrow in scope than the language it issue here." *Id.* at 720 n.3.

---

[2] Because the December 1999 Customer Account Form does not include internal page numbers, all pinpoint citations in this Order refer to the page number assigned by CM/ECF.

In light of this relatively narrow arbitration clause, the Court must find that the present dispute is outside of the scope of the agreement. First, as Plaintiffs' complaint makes clear, this case is about the advice which Defendant Coda gave to John Verducci. They do not allege that Mr. Coda "mishandled John Verducci's brokerage accounts," nor claim any impropriety with respect to the IRA investments, nor allege that the money was not distributed to the designated beneficiary. (Opp. at 4.) As such, the Court cannot conclude that this matter arose out of John Verducci's agreement or business with SagePoint, but instead finds that it arose out of Defendant Coda's allegedly negligent or fraudulent advice.

Moreover, the terms of the agreement indicate to the Court that Defendant Coda's advice could not have been part of John Verducci's business with SagePoint. The same forms which contain the arbitration agreements also explicitly state: "I understand that [SagePoint] provides no tax, legal or investment advisory services nor do you [(SagePoint)] give advice or offer any opinion with respect to the suitability of any security or order unless you are specifically allowed, by law, to do so."[3] (Dec. 1999 Customer Account Form at 5; Mar. 2001 Account Application at 4.) Given that SagePoint made a specific disclaimer of giving tax, legal, and investment advice, any such advice given by Defendant Coda could not possibly have arisen out of the relevant agreements.

In light of this disconnect between Defendant Coda's allegedly tortious advice and the agreement between John Verducci and SagePoint, the Court finds that this dispute does not fall within the scope of the relevant arbitration agreements. Therefore, the motion to compel arbitration is **DENIED**.[4]

//

//

//

---

[3] Although Defendants spends a substantial portion of their reply brief arguing that Defendant Coda did not provide tax or legal advice, they admit that he provided John Verducci with investment advice. (Reply at 5.) However, since the relevant agreements also state that SagePoint does not give investment advice, the characterization of the advice at issue does not change the analysis.

[4] The third element of any arbitration analysis whether the party seeking to invoke the arbitration clause has waived their right to do so. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005). Neither Plaintiffs nor Defendants argue waiver, so it is not discussed here.

**CONCLUSION**

For the reasons stated, Defendants' motion to compel arbitration is **DENIED**.

IT IS SO ORDERED.

DATED: August 3, 2010

Honorable Janis L. Sammartino
United States District Judge